UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 10-20906-CIV-MORENO

ASCENTIUM CORP.,

    Plaintiff,

vs.

TERREMARK NORTH AMERICA, INC.,

    Defendant.
_____/

## ORDER DENYING MOTION TO DISMISS

Plaintiff, Ascentium Corp. ("Ascentium"), has sued Defendant, Terremark North America, Inc. ("Terremark") for unjust enrichment and conversion, alleging that Ascentium mistakenly made post-contractual payments to Terremark which Ascentium did not owe and which Terremark refused to return. Terremark has moved to dismiss Ascentium's claims for unjust enrichment and conversion pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the Court finds that Ascentium has properly stated claims for unjust enrichment and conversion, and accordingly, DENIES Terremark's Motion to Dismiss.

### I. Background

Ascentium is a company that provides interactive marketing, application development and product branding services, among other consulting services, to its customers. Ascentium subcontracts website hosting services for its customers through third party providers such as Terremark, a company that provides internet website hosting and related services. On August 20, 2008, Ascentium and Terremark entered into a written Master Agreement (the "contract"), attached

hereto as Exhibit "A," in which Terremark was to provide certain website hosting equipment and services to Ascentium for a six-month term. The contract provided that it would automatically renew for a successive six-month term upon expiration of the current term unless either party gave notice of its intent not to renew at least ninety (90) days prior to the expiration of the current term. The contract also contained a clause providing for early termination upon thirty (30) days prior written notice to Terremark.

On December 29, 2008, Jonathan Scott of Ascentium informed Kathy Vayder, Terremark's manager in charge of contract renewals, via email of Ascentium's intent not to renew the contract and inquired about how to terminate the contract. In response, Ms. Vayder wrote to Mr. Scott on December 31, 2008 instructing that he should send a written notice of Ascentium's intent to not renew to Terremark's legal department and representing that such a letter would prevent the automatic renewal clause from taking effect. Accordingly, on January 6, 2009, Mr. Scott sent a letter to Terremark's legal department informing Terremark of Ascentium's intent not to renew the contract; Terremark received the letter on January 7, 2009. Ascentium alleges that the contract thus expired when Terremark received the termination letter in accordance with Ms. Vayder's written instructions.

In March of 2009, Terremark ceased providing equipment, software and related hosting and support services as provided under the contract, but began sending Ascentium invoices for increased monthly payments, which Ascentium, due to an oversight in its accounting department, paid for five months until it discovered the error in September of 2009. Ascentium asserts that while a portion of each of those five monthly payments was properly owed and credited to Terremark under a *separate* contract between the parties, the remainder of each payment constituted an erroneous overpayment,

for a total of $402,500.00 in overpayments. Kevin McVicker of Ascentium stated as much to Terremark in writing and requested a refund of the overpayments accordingly. On October 16, 2009, Thomas Jones of Terremark confirmed via email to Mr. McVicker that Ascentium's calculations for a refund were correct and that Terremark would send the refund payment to Ascentium by November 30, 2009.

Contrary to Mr. Jones's email, however, Terremark did not refund the overpayments and instead asserted that the contract had automatically renewed for a second term and that no refund would be forthcoming. As a result, Ascentium filed the instant lawsuit alleging that Terremark has been unjustly enriched by Ascentium's $402,500.00 in overpayments and that Terremark has converted the money by failing to return it to Ascentium upon demand.

## II. Standard of Review

The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss pursuant to Rule 12(b)(6), the Court views the complaint in the light most favorable to the plaintiff, *Glover v. Ligett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006), accepting the well-pleaded facts of the complaint "and all reasonable inferences therefrom . . . as true," *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). Nevertheless, "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555 (citations omitted). A complaint must have "enough facts to state a claim to relief that is plausible on its face;"

if it does not "nudge[] the[] claims across the line from conceivable to plausible, [it] must be dismissed." *Id.* at 570.

### III. Discussion

*A. Unjust Enrichment*

To state a claim for unjust enrichment, a plaintiff must allege that: (1) plaintiff conferred a benefit upon defendant of which defendant was aware; (2) defendant voluntarily accepted and retained the benefit conferred; and (3) it would be inequitable for defendant to retain the benefit without paying for it. *Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1006–07 (11th Cir. 2004). Furthermore, the plaintiff must also allege that no adequate legal remedy exists. *See Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236–37.

Here, Ascentium's Complaint clearly alleges the first three elements of a claim for unjust enrichment. To the extent of the additional requirement that plaintiff plead the absence of an adequate legal remedy, the Court reasonably infers that this requirement is met here because the Complaint clearly alleges that the overpayments were made after the contract had expired and hence that the unjust enrichment claims arise outside the scope of the contract. *See AutoNation, Inc. v. GAINSystems, Inc.*, No. 08-61632-CIV, 2009 WL 1941279, at *4–5 (S.D. Fla. July 7, 2009) (denying motion to dismiss claims for unjust enrichment and quantum meruit even though the parties had entered into a contract because complaint alleged matters outside the scope of the contract); *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1365–66 (S.D. Fla. 2009) (refusing to dismiss an unjust enrichment claim when "reasonable inferences drawn from the Complaint demonstrate there may be an inadequate remedy at law as to some of Defendant's alleged misconduct"). Thus, the Court finds that Ascentium has properly stated

claims for unjust enrichment.

### B. Conversion

To state a claim for conversion, a plaintiff must allege that: (1) he has a right to the property; (2) he has an absolute right to the immediate possession of the property; (3) he made a demand for possession of the property; and (4) the defendant wrongfully assumed control or ownership over the property. *AutoNation*, 2009 WL 1941279, at *7. Here, Ascentium's Complaint clearly alleges all four of the above elements. Terremark argues, however, that Ascentium cannot sustain its conversion claims due to the economic loss rule. The Court finds this argument to be without merit.

In Florida, the economic loss rule bars a tort claim to recover solely economic damages for those in contractual privity; it is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort. *Indem. Ins. Co. of N. Am. v. Am. Aviation Inc.*, 891 So. 2d 532, 536 (Fla. 2004). Tort claims that exist independently of any contractual breach, however, are not barred by the economic loss rule. *See id.* at 537. Such claims include intentional torts such as conversion. *See Scinica v. Bank of Am., N.A.*, No. 09-21470-CIV, 2010 WL 1257704, at *2 (S.D. Fla. Mar. 29, 2010). Here, the Complaint makes clear that Ascentium's conversion claims arise from payments Ascentium mistakenly made to Terremark *after* the contract had expired which Ascentium did not owe and which Terremark thereafter refused to return. Thus, the Court finds that Ascentium's conversion claims are not barred by the economic loss rule.

The Court similarly rejects Terremark's argument that Ascentium's conversion claims must fail because Ascentium has not identified the specific funds which Terremark allegedly

converted. The "specific fund" rule does not apply when the right to payment is not based on any contractual relationship between the parties. *See Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1108–09 (11th Cir. 1998) (refusing to apply specific fund rule to conversion claim not based on a breach of contract). Moreover, Ascentium has identified a specific sum in any event–the alleged $402,500.00 in overpayments which Terremark refused to return. Therefore, the Court finds that Ascentium's conversion claims are not barred by the specific fund rule.

### IV. Conclusion

The Court finds that Ascentium's Complaint properly states claims for unjust enrichment and conversion against Terremark. Accordingly, it is

**ADJUDGED** that Defendant Terremark's Motion to Dismiss **(D.E. No. 6)**, filed on **April 27, 2010** is DENIED. Further, it is

**ADJUDGED** that Defendant shall file an answer to the Complaint by **April 15, 2011**

DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of March, 2011.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record